IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVID MARTINEZ, JR. #1807710, | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. A-12-CV-141-SS |
| CORPORAL JAMES PALERMO, | § § | |
| Defendant. | § § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE SAM SPARKS
      UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Defendant's Motion for Summary Judgment [#23], Plaintiff's Motion to Deny Summary Judgment Motion [#25], Plaintiff's Rebuttal to Defendant's Motion for Summary Judgment [#26], Plaintiff's Notice [#27], Plaintiff's Notice [#28], and Defendant's Advisory to the Court [#29]. Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis. Order (Feb. 15, 2012) [#4]. For the reasons set forth below, the undersigned concludes that the motion for summary judgment should be granted.

**STATEMENT OF THE CASE**

I. **PROCEDURAL HISTORY**

Martinez is currently housed at the Jester Unit of the Texas Department of Criminal Justice–Correctional Institutions Division. Following his arrest by Defendant City of San Marcos Police Corporal James Palermo on July 31, 2011, Martinez was charged with driving while intoxicated (3rd or more), resisting arrest, and driving while license invalid/enhanced. Mot. for Summ. J. Ex. 1(a) at 1. He was also issued citations for speeding (warning), failure to provide driver's license when requested, open alcohol in vehicle, and failure to change driver's license address. *Id.* at 8. Through a plea bargain agreement, Martinez was convicted of the third-degree felony of driving while intoxicated and sentenced to twenty years of imprisonment; the misdemeanor charges of resisting arrest and driving while license invalid were dismissed. Def.'s Advisory to the Court, Exs. 1-3 [#29].

Martinez sues Palermo under 42 U.S.C. § 1983, claiming he was wrongfully arrested, subjected to excessive force through use of physical force, unconstitutionally compelled to give a blood sample, and the subject of unconstitutional profiling. Compl. at 4-8. He asserts that his arrest caused him to lose property, including his truck, computer, and contents of the truck, which are valued at $10,000. *Id.* at 8. He seeks $910,000 in damages for physical injury and property loss. *Id.* at 4.

II. **FACTUAL BACKGROUND**

On July 31, 2011, Martinez was driving northbound on IH-35 through San Marcos. Mot. for Summ. J. Ex. 1(a) at 4. According to Palermo, Palermo was in his patrol vehicle responding to a call regarding an erratic driver (not related to Martinez), and observed Martinez come over a bridge at

a speed exceeding the 65 m.p.h. speed limit. *Id.* Palermo asserts that he activated his radar and clocked Martinez at 78 m.p.h. *Id.* Martinez questions whether he was indeed exceeding the speed limit. Pl.'s Mot. to Deny Summ. J. at 1-2.

Palermo asserts that as the vehicle passed, he observed it drift right and drive on the right divider/fog line. Mot. for Summ. J. Ex. 1(a) at 4. According to Palermo, after he pulled behind Martinez's vehicle and observed the vehicle drift left onto the left-side line, he activated his overhead lights. *Id.* The video of the traffic stop indicates that Martinez exited at the next exit, and then proceeded into a shopping center parking lot. Mot. for Summ. J. Ex. 1(b) (Video of Traffic Stop (July 31, 2011)). According to Palermo, Martinez's vehicle was handled abruptly and made movements that appeared aggressive to Palermo. Mot. for Summ. J. Ex. 1(a) at 4. Martinez agrees that he did drift right, but asserts he did not drive aggressively. Pl.'s Mot. to Deny Summ. J. at 2.

The video of the stop indicates that Martinez stopped his vehicle in the parking lot, made some movements in the cab of the vehicle, and then appeared to close the vehicle's passenger window and lock the passenger door before exiting his truck and leaving his door wide open. Mot. for Summ. J. Ex. 1(b). According to the video, Palermo advised Martinez that he had been stopped for speeding. *Id.* Palermo asserts that when speaking to Martinez he observed Martinez to be swaying, believed his eyes were glassy, and detected a strong smell of alcohol on his breath. Mot. for Summ. J. Ex.1(a) at 5.

According to the video, Martinez started to walk back toward his vehicle, and Palermo told him not to go to that area. Mot. for Summ. J. Ex. 1(b). Palermo asserts that he noticed a Busch beer can on the driver's floorboard. *Id.*; Mot. for Summ. J. Ex. 1(a) at 5. The video reflects that when Martinez went back to his vehicle and started to lean inside, Palermo took him by the elbow and

guided him back away from the truck, because, Palermo asserts, he did not know what might be in the vehicle and what Martinez was reaching for. *Id.;* Mot. for Summ. J. Ex. 1(b).

According to the video and Palermo, over the period of about a minute, Martinez first advised Palermo that he did not drink, then reported that he only had one beer that night when Palermo pointed out the open beer can, and shortly thereafter, indicated that he had nothing to drink that night. *Id.*; Mot. for Summ. J. Ex. 1(a) at 5. The video and Palermo also indicate that when asked for his driver's license, Martinez was argumentative and indicated that he "was not driving," but "traveling" as protected by the Constitution and was thus not required to show a driver's license. *Id.*; Mot. for Summ. J. Ex. 1(b). The video shows, and Palermo also asserts, that when Palermo asked Martinez if he would do any sobriety tests, Martinez indicated that he would not. *Id.*; Mot. for Summ. J. Ex. 1(a) at 5.

Palermo is a Standardized Field Sobriety Testing Practitioner and Drug Recognition Expert, which includes the Horizontal Gaze Nystagmus. *Id.* at 5. Palermo states that based on his observations and communications with Martinez, he determined that he had probable cause to arrest Martinez for failure to provide his license and it also appeared he was under the influence. *Id.* at 5-6. Palermo also states that it is unusual in a traffic speeding stop for a driver to lock the passenger door and exit the vehicle, and notes that he did not know what was in the vehicle. *Id.* at 5. Martinez asserts that Palermo could see in his truck and observe that there was no weapon, and Palermo could also see that Martinez was not holding a weapon in his hands. Compl. at 4, 5.

Palermo explains that he then took Martinez's arm and tried to put it behind Martinez's back in order to handcuff him. Mot. for Summ. J. Ex. 1(a) at 6. Martinez asserts, and the video reflects, that Palermo did not first state that he was arresting Martinez before he went to handcuff him. Mot.

4

for Summ. J. Ex. 1(b); Pl.'s Mot. to Deny Summ. J. at 2. Martinez asserts that Palermo threw him to the ground. *Id.* According to Palermo, Martinez kept his arm stiff when Palermo went to handcuff him and pulled back as Palermo tried to swing it around. Mot. for Summ. J. Ex. 1(a) at 5-6. The video, Palermo, and Martinez all indicate that at this point, both Palermo and Martinez went to the ground. *Id.*; Mot. for Summ. J. Ex. 1(b); Mot. for Summ. J. Ex. 2 at 76 (Dep. of Martinez). The video does not show Martinez and Palermo while they were on the ground because that area was outside the camera's range, but it does include the audio portion of their interactions. The audio reflects that while on top of Martinez, Palermo asked Martinez several times to put his hands behind his back. Mot. for Summ. J. Ex. 1(b). According to Palermo, Martinez did not comply, but instead waved and pulled at his arms in a way that prevented Palermo from handcuffing Martinez. Mot. for Summ. J. Ex. 1(a) at 6. Martinez asserts that after he was on the ground, his hands were in the air and Palermo was struggling to take out his Taser. Pl.'s Mot. to Deny Summ. J. at 2. He further states that Palermo was twisting Martinez's arm behind his back in a painful way and Martinez was not struggling, but reacting to the pain of having his arm twisted. *Id.*

According to Palermo and the video, Palermo warned Martinez that he would tase him if he did not cooperate by providing his hands. *Id.*; Mot. for Summ. J. Ex. 1(a) at 6. Palermo asserts, and the video partially reflects, that Martinez refused, continued to actively resist arrest, and started trying to stand despite Palermo telling him not to get up. *Id.*; Mot. for Summ. J. Ex. 1(b). Martinez states that Palermo picked him up by twisting his arm behind his back. Pl.'s Mot. to Deny Summ. J. at 2. The video also partially shows, and Palermo states, that when Martinez was all the way up, Palermo activated his Taser against Martinez's back, causing both of them to fall back to the ground as Palermo activated his Taser a second time to stop Martinez from struggling against him. Mot. for

Summ. J. Ex. 1(b); Mot. for Summ. J. Ex. 1(a) at 6. According to Martinez and the video, Martinez made repeated requests for Palermo to stop tasing him. Mot. for Summ. J. Ex. 1(b); Pl.'s Mot. to Deny Summ. J. at 3. Martinez also asserts generally that he did not resist arrest. Compl. at 8.

According to Palermo, this second Taser activation worked, and Palermo was able to secure Martinez on his back with his arms pinned down until assistance arrived. Mot. for Summ. J. Ex. 1(a) at 6. The video reflects, and Palermo reports, that Palermo continued holding Martinez down on the ground in this position until two other officers arrived. Mot. for Summ. J. Ex. 1(b); Mot. for Summ. J. Ex. 1(a) at 6. According to Palermo and the two other officers, when the additional officers arrived, they rolled Martinez onto his stomach as he resisted by pulling away and trying to roll over. *Id.* at 6, 11, 15. Palermo and the other two officers assert that Martinez would not release his arms or turn over to his stomach. *Id.* at 6, 11, 14-15. According to Palermo and the two other officers, after warning Martinez that he would tase him if he did not cooperate, Palermo activated his Taser an additional time, which caused Martinez to release his arms and the officers were able to handcuff him. *Id.*; *see also* Mot. for Summ. J. Ex. 1(b) (reflected partially in audio portion on video tape of encounter). The San Marcos Police Department Taser report indicates that Palermo used his Taser three times on July 31, 2011. Mot. for Summ. J. Ex. 1(a) at 18-19. Martinez submits photographs of his torso showing several marks, and asserts that he was tased nine times. Compl. at 6-8; Pl.'s Mot. to Deny Summ. J. at 3 & Attachs.

According to Palermo, after Martinez was placed in his patrol unit, Martinez's vehicle was searched, and two open beer cans and a plastic six-ring holder were found in the truck. Mot. for Summ. J. Ex. 1(a) at 7. Palermo asserts that through an offender card in Martinez's wallet, he learned Martinez's identity, and he also ascertained through a records check that Martinez had two

6

prior driving under the influence (DUI) convictions and no driver's license due to two suspensions. *Id.* Palermo states that Martinez was read his rights and was asked to give a blood sample for testing, which he refused. *Id.*; Mot. for Summ. J. Ex. 1(b). According to both Palermo and Martinez, Martinez was then transported to the Central Texas Medical Center for a compelled, warrantless blood draw under Texas Transportation Code § 724.012(b)(3)(B), due to his two prior DUI convictions. Mot. for Summ. J. Ex. 1(a) at 9. A Texas DPS laboratory report reflects that Martinez's blood alcohol content ("BAC") was at .22. *Id.* at 20.

## DISCUSSION

Palermo seeks summary judgment on all of Martinez's claims. *See* Mot. for Summ. J. [#23]. Palermo argues that he is entitled to summary judgment with respect to Martinez's wrongful arrest claim because there was probable cause that a crime had been committed. He contends that the evidence does not show the excessive force required for an excessive force claim. He argues that Martinez's constitutional rights were not violated, he is entitled to qualified immunity for all the claims, and the wrongful arrest, blood draw, and profiling claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

## I.   SUMMARY JUDGMENT STANDARD

When a summary-judgment motion is presented, a court may render judgment if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). The adverse party to such a motion must identify specific facts showing there is a genuine issue for trial. *See, e.g., Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); FED. R. CIV. P. 56; *see also James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) ("The standard of review is not merely

whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court."). In order to establish a genuine dispute as to material facts, the nonmoving party must "go beyond the pleadings," and by affidavits or other competent summary-judgment evidence, identify "specific facts" that show there is a genuine issue for trial. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010) (quotation and citation omitted). Conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence will not suffice. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

In deciding whether to grant summary judgment, the Court views the evidence in the light most favorable to the party opposing summary judgment and indulges all reasonable inferences in favor of that party. *See, e.g., United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (*per curiam*). If material facts are not in genuine dispute, a court may resolve the case as a matter of law. *See, e.g., Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994).

**II.   WRONGFUL ARREST**

Martinez contends his arrest was not supported by probable cause and was an improper arrest because Palermo did not inform Martinez he was arresting him before he initiated putting handcuffs on him. *See* Pl.'s Rebuttal; Compl. at 5.

**A.   BAR UNDER *HECK V. HUMPHREY***

Martinez's damages claim for wrongful arrest is foreclosed because it is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Heck*, the Supreme Court held that § 1983 plaintiffs could not recover damages for a purportedly unconstitutional conviction or for purported harms whose unlawfulness would render a conviction invalid, unless the conviction at issue had been somehow overturned.

8

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

*Id.* (footnote omitted). Therefore, affirmative claims, including those asserted under 42 U.S.C. § 1983, are barred as a matter of law if a successful claim would have the effect of invalidating or contradicting a criminal conviction. The rationale for the *Heck* rule is that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments. *Id.* at 486.

With respect to a wrongful arrest claim, the Fifth Circuit has explained that a wrongful arrest claim necessarily challenges the validity of a conviction by requiring a showing that there was no probable cause for the underlying arrest. *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995). Martinez does not allege that his conviction has been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck* therefore bars Martinez's wrongful arrest claim. *See id.*

### B.   Merits of Claim

Alternatively, Martinez's claim is without merit. In order to establish a claim for unlawful arrest, a plaintiff must show that he was arrested without probable cause. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 481 (5th Cir. 1999). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Haggerty*, 391 F.3d at 655-56 (citation

omitted); *see also Hill v. California*, 401 U.S. 797, 804 (1971) ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment.").

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," including temporary detention during a traffic stop. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). If a police officer has probable cause to believe that a traffic violation has occurred, the decision to stop an automobile is reasonable. *Id.* The warrantless arrest of an individual in a public place for a felony or a misdemeanor committed in the officer's presence also satisfies the Fourth Amendment if the arrest is supported by probable cause. *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001); *United States v. Watson*, 423 U.S. 411, 424 (1976). The probable-cause standard is an objective standard and the totality of the circumstances determines whether there are reasonable grounds to believe a crime was committed. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). To determine whether an officer had probable cause to arrest an individual, courts consider the events leading up to the arrest to determine whether the facts, viewed from the standpoint of an objectively reasonable police officer, are sufficient to constitute probable cause. *Id.*

Martinez's primary argument appears to be that the absence of an express statement from Palermo that "you are under arrest" prior to physical contact rendered the arrest unconstitutional.[1] *See, e.g.,* Pl.'s Mot. to Deny Summ. J. at 2-3; Pl.'s Rebuttal at 1. He, however, offers no supportive authority. He cites two district-court decisions that are over forty years old and from other circuits, but neither support his position. Both recognize that varying circumstances can be indicative of an

---

[1] Martinez's challenge to probable cause appears to be limited to whether he was initially speeding. *See* Pl.'s Rebuttal at 2.

"arrest" and neither indicates the prerequisite of a verbal announcement.[2] Martinez's argument fails to account for the established case law governing his claim. The Court must apply the governing requirements for a wrongful arrest claim.

It was objectively reasonable for Palmero to have believed that Martinez had committed a crime. Palermo's initial stop of Martinez's vehicle followed Palermo's observation and conclusion that Martinez was speeding. The summary judgment record also includes evidence indicating that Palermo viewed Martinez drive erratically, behave unusually for the situation, fail to follow Palermo's directives, refuse to show a driver's license, have an open container of alcohol in his truck, smell and appear under the influence, offer inconsistent statements about his alcohol consumption, and indicate that he would not perform a sobriety test. These were all facts that considered together, established probable cause for an arrest for driving under the influence. *See, e.g., Texas Dep't of Pub. Safety v. Nielsen*, 102 S.W.3d 313, 317 (Tex. App.–Beaumont 2003, no pet.) (totality of circumstances, including refusal to take field sobriety tests, supported probable cause); *State v. Garrett*, 22 S.W.3d 650, 654-55 (Tex. App.–Austin 2000, no pet.) (totality of circumstances provided probable cause for DUI arrest).

Because there is no material factual dispute whether Martinez's arrest was supported by probable cause, Palermo should be granted summary judgment on the claim for wrongful arrest.

---

[2] In *United States v. McHendrick*, the court observed that it is difficult to pinpoint the moment an arrest occurs during a stop. 266 F.Supp. 718, 724 (S.D.N.Y. 1967). In that case, the court held that an arrest did not occur when the vehicle at issue was first stopped and the occupants were ordered out of the car at gunpoint and were frisked. In *United States v. Raidl*, the court considered Ohio law to decide if an arrest had occurred that would have authorized a search incident to an arrest. 250 F.Supp. 278, 280 (N.D. Ohio 1965).

### C.     Qualified Immunity

Palermo also asserts qualified immunity to this claim. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). "[Q]ualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." *Brady v. Fort Bend County*, 58 F.3d 173, 174 (5th Cir. 1995) (citation and quotation omitted).

In assessing the defense, a court determines whether the plaintiff has asserted the violation of a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). If that inquiry is answered in the affirmative, the defendant's conduct is then considered to determine if the conduct was objectively reasonable in light of the established law. *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993). To rebut the qualified-immunity defense when, as in this case, a defendant has asserted qualified immunity in a summary-judgment motion, the plaintiff must "establish[] a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).[3]

---

[3] If a plaintiff does make such a showing, then the plaintiff must also identify a genuine factual dispute whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. *See, e.g., Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008). Martinez has not done so in this case. Palermo acted as a reasonable officer would have under the same or similar circumstances. Given the information available to him and Martinez's conduct and

As explained above, Martinez fails to create a genuine, material factual dispute that Palermo's conduct violated clearly established law and constituted a constitutional violation. Because the totality of the circumstances supported probable cause and no clear precedent supports Martinez's theory that failing to announce "you are under arrest" renders an arrest unconstitutional, Palermo is also entitled to qualified immunity on Martinez's claim.

### III. EXCESSIVE USE OF PHYSICAL FORCE

Martinez alleges excessive use of physical force by Palermo when he: (1) took Martinez's arm to pull him back from his truck; (2) grabbed Martinez's arm to handcuff him; and (3) used his Taser.

#### A. Merits of Claim

Claims of excessive force are assessed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1985). To prevail on his Fourth Amendment excessive force claim, Martinez must establish: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). Whether the force used was "clearly excessive" and "clearly unreasonable" depends on "the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. Some relevant considerations include "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.*

---

communications, it was reasonable for Palermo to assume that announcing an intention to arrest under these circumstances could have exacerbated the situation.

The Court considers whether the officer's conduct was objectively reasonable in light of the facts and circumstances confronting him, without regard to underlying intent or motivation. *Id.* at 397. A constitutional violation does not occur every time an officer touches someone, and de minimis uses of force do not constitute a violation as long as it is not "repugnant to the conscience of mankind." *Id.* Moreover, Fourth Amendment jurisprudence recognizes that the right to make an arrest carries with it the right to use some degree of physical coercion or threat in order to carry it out. *Id.* at 396. The Supreme Court additionally recognizes that law enforcement officers are often in "tense, uncertain, and rapidly evolving" situations during which they are required to make split-second judgments. *Id.* Courts do not determine the reasonableness of officers' use of force "with the 20/20 vision of hindsight," but rather "from the perspective of a reasonable officer on the scene." *Id.* The proper inquiry is "whether the officers' actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* Use of force is not excessive just because an officer used more force than he needed, so long as he reasonably believed that the suspect was going to fight back, even if that reasonable belief was incorrect. *Saucier v. Katz*, 533 U.S. 194, 205 (2001). Given the context of summary judgment, the Court must view the facts in a light most favorable to Martinez.

### 1. Pulling Martinez Back From Truck

Martinez fails to assert any injury in relation to Palermo preventing Martinez from reaching into his vehicle, which is one of the required elements for an excessive force claim. In addition, Palermo did not use excessive force by grabbing Martinez's arm when Martinez reached into his truck after being told not to do so. After the stop and Martinez's exit of his vehicle, Martinez was told to step away from the vehicle, but he ignored this instruction and went back towards his vehicle

14

to reach inside. Mot. for Summ. J., Ex. 1(b). When Martinez did so, despite the fact that Palermo did not know what Martinez was reaching for and Martinez was expressly ordered not to do so, the only force used by Palermo was to take Martinez's arm and guide him away from the open car door. *Id.* This limited use of force was objectively reasonable. For both of these independent reasons, Martinez fails to identify a dispute of material facts that would allow this claim to withstand summary judgment.

### 2. Grabbing Martinez in Order to Handcuff

Martinez also fails to assert any injury resulting from Palermo grabbing Martinez's arm in order to handcuff him, without first expressing his intention to place Martinez under arrest. In addition, Palermo did not use excessive force in this interaction. As discussed, because there is no constitutional entitlement to be told "you are under arrest" before contact is initiated, a reasonable officer would not believe that he had to make such a statement in the circumstances of this case. Given that Palermo had probable cause to arrest Martinez and in light of Martinez's conduct and comments and the fact that state law allows all reasonable means be used to effect an arrest, but no greater force than necessary, TEX. CODE OF CRIM. P., art. 15.24, a reasonable officer in Palermo's situation would not view Palermo's use of physical force to handcuff Martinez as unreasonable. For both of these independent reasons, Martinez fails to identify a dispute of material facts that would allow his claim to withstand summary judgment.

### 3. Use of Taser

The summary judgment evidence does not present a material fact dispute whether Palermo's use of the Taser was clearly excessive or objectively unreasonable. "In gauging the objective reasonableness of the force used," the court "must balance the amount of force used against the need

for that force." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996). Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham*, 109 S.Ct. at 1872. "The amount of force that is constitutionally permissible, therefore, must be judged by the context in which that force is deployed." *Ikerd*, 101 F.3d at 434.

Palermo's use of his Taser did not constitute excessive force. The record indicates that Martinez was not cooperative, and instead was argumentative and resistant, struggling against Palermo's express requests that he put his hands behind his back. In addition, the encounter began with Martinez getting out of his truck after rolling up the passenger window and locking the door, which Palermo regarded as atypical behavior for someone being stopped for speeding. Mot. for Summ. J. Ex. 1 at 2; Mot. for Summ. J. Ex. 1(a) at 4. At the time of the initial Taser use, Palermo was by himself, Martinez had still not been identified, Palermo had not ascertained his criminal history, Martinez had not been searched, and Martinez had not complied with Palermo's verbal commands. Even when assistance arrived, these facts were all factors at issue. The record indicates that Palermo used the Taser for the limited purpose of taking Martinez to the ground and getting him under control so he could be handcuffed for arrest. There is no evidence of any continued use of the Taser or any gratuitous force beyond this goal. Indeed, Palermo warned Martinez each time prior to using the Taser, and while waiting for assistance to arrive, physically restrained Martinez on the ground without using the Taser. All these circumstances together indicate that no reasonable juror could find that Palermo's use of the Taser constituted excessive force. *See Wilkins v. Gaddy*, – U.S.–, 130 S. Ct. 1175, 1178 (2010) (holding that inquiry in excessive force cases is "whether force

was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"). Palermo should be granted summary judgment on the excessive force claim.

### B.    Qualified Immunity

Palermo also asserts that he is entitled to qualified immunity from this claim. As discussed, unless the right violated was so clear that a reasonable official would have understood that what he was doing violated that right, an officer enjoys qualified immunity. *See supra* II.B. The nature and amount of force used by Palermo was reasonable under the circumstances, as reviewed above. *See supra* III.A. Martinez presents no evidence indicating that no reasonable officer would have responded in the way that Palermo did. As a result, Palermo is entitled to qualified immunity with regard to this claim.

## IV.    COMPELLED BLOOD DRAW

### A.    *Heck* Bar

Palermo asserts that Martinez's claim that his blood was drawn in violation of his constitutional rights is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). Because there was other DUI evidence available through the video of the traffic stop, the police reports, testimony by Palermo and the other two officers at the scene, and possibly hospital personnel, the evidence obtained from the blood draw was not necessarily the determinative evidence supporting Martinez's DUI conviction. As a result, this claim is not barred by *Heck*.

### B.    Merits of Claim

Martinez challenges his warrantless, compelled blood draw. The blood draw was authorized under Texas Transportation Code § 724.012, which provides that a blood test can be compelled if refused under certain, specific circumstances. TEX. TRANSP. CODE § 724.012(b)(3)(B). There is no

suggestion that Palermo went beyond the statute's express provisions. Martinez's only claim appears to be that the statute is unconstitutional on its face. The constitutionality of compelling production of blood evidence of intoxication without a warrant has been recognized. *See Schmerber v. California*, 384 U.S. 757, 768-69 (1966) (blood sample allowed in absence of warrant because delay in obtaining warrant would have resulted in loss of evidence as blood alcohol level diminished).[4] Palermo is entitled to judgment as a matter of law with respect to Martinez's complaint that he was compelled to give blood for a blood alcohol test.

### C. Qualified Immunity

Palermo is also entitled to the qualified immunity he seeks from this claim. As discussed, unless the right violated was so clear that a reasonable official would have understood that what he was doing violated that right, an officer enjoys qualified immunity. *See supra* II.B. At the time of the events at issue, there was no controlling precedent determining the statute to be unconstitutional. As a result, a reasonable officer would not have believed that what he was doing violated a clearly established right. Palermo is entitled to qualified immunity from this claim as well.

## V. PROFILING

Martinez complains that he was the victim of unconstitutional profiling because Palermo allegedly viewed him as "an anti-government guy." Compl. at 5. Even assuming that Palermo indeed viewed Martinez as he suggests, there is no constitutional right to be free from profiling on the basis of alleged anti-government sentiments; an "anti-government" identity is not part of a class that enjoys constitutional protections and Martinez offers no authority suggesting so. As a result,

---

[4] Currently pending before the U.S. Supreme Court is a Fourth Amendment challenge to a compelled and warrantless blood draw of a defendant allegedly driving under the influence. *See Missouri v. McNeely*, No. 11-1425, 133 S. Ct. 98 (2012) (granting petition for writ of certiorari).

18

Palermo is entitled to judgment as a matter of law on the merits of this claim.[5] He is additionally entitled to qualified immunity for the same reasons discussed and applied above.

## RECOMMENDATION

For these reasons, the undersigned recommends that the Court grant Defendant's Motion for Summary Judgment [# 23] and render a take-nothing judgment.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall also bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is

---

[5] Palermo urges the Court to recognize a *Heck* bar for this claim as well, but fails to show how this claim necessarily contradicts or undermines Martinez's conviction. The *Heck* bar is inapplicable to this claim.

ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 30th day of January, 2013.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE